## COOPWOOD, et al. v. WALLACE.

1. Counsel, who with the consent of the client, withdraws from a case, after having rendered beneficial services, does not thereby lose his right to compensation for the services rendered, unless at the time of his withdrawal, he waives, or abandons his claim to compensation.

2. An attorney at law, who at the instance of the administrators of an estate, has rendered valuable services to the estate, may proceed at once against the estate in equity, to recover his fee, without previously suing the administrators at law, one having removed from this State, and the other being insolvent; and neither having made any charge against the estate for the attorney's fee.

3. An attorney at law cannot recover more than he agreed to receive, by proof that his services were worth more.

Writ of Error to the Chancery Court of the 30th District, Northern Division.

THE defendant in error filed his bill against James M. Coopwood, Bennett Driver, and Samuel Henderson, the material allegations of which are, that Coopwood, and Driver, in the year 1836, were appointed administrators of the estate of John Reynolds, by the orphans' court of Lawrence county. That it became necessary to employ counsel to bring suits, to recover the property belonging to said estate, and that complainant was employed by them to bring these suits for the recovery of some slaves. Also, that complainant was employed to aid, by his counsels and advice, the said Coopwood and Driver in the administration of said estate. That he prepared two of the cases before mentioned for trial, procured the testimony necessary to establish the right of the plaintiffs, as administrators, by taking the depositions of witnesses living in Mississippi, Tennesse, and Alabama; that at the trial of the cases, he was absent, but A. F. Hopkins and Wm. Cooper, acted as the counsel of said Coopwood and Driver, and recoveries were had for twenty-two or three slaves.

That his services in conducting these cases, and preparing them for trial, were worth $250, and his services in attending to the business of the estate, in the orphans' court were worth $50. That said Coopwood and Driver have paid him nothing; that they are both insolvent, and that Coopwood has removed from the State. That Henderson was appointed administrator *de bonis non* of said estate, and came into the possession of said slaves, and is possessed of the goods of the estate; and prays that the assets of said estate may be subjected to the payment of his demand. Henderson and Driver were served with subpœnas, and answered the bill, Coopwood was made a party by publication, and a decree *pro confesso* taken against him.

The answer of Henderson admits, that he was informed, and believed, that complainant was employed to bring the suits; but that in some short time afterwards, he was appointed clerk of the supreme court of the State of Alabama, and removed from Moulton to Tuscaloosa, being about 110 miles from the former place; and that complainant informed Coopwood and Driver, that owing to his removal, he could not attend further to the suits, and he would not charge any fees for the services he had rendered. That Hopkins and Cooper were employed by Coopwood and Driver, who took charge of the suits, and complainant rendered no further service in the prosecution of the suits. He admits he was appointed administrator *de bonis non*; and that he, as such, is possessed of considerable personal property belonging to said estate. Henderson obtained leave, and filed an amended answer, in which he insists on the statute of limitations of three years as a bar to the demand.

The answer of Driver admits the employment of complainant, and that the suits were instituted about the year 1838, but that shortly after complainant was appointed clerk of the supreme court, removed to Tuscaloosa, and informed said Driver, and Coopwood, that he could not further attend to said suits, and advised the employment of other counsel, and recommended the employment of A. F. Hopkins to attend to the suits; and then informed the said Coopwood and Driver, that he would not charge the estate any thing for the

services he had rendered the estate; and states that complainant never gave any further attention to said suits, or if he did, it was merely gratuitous, and not at the request of either Driver, or Coopwood. That two of the suits have been tried, one in March, 1841, the other in 1842, and denies that the suits were managed and prepared for trial by complainant. Driver denies that he is insolvent, and also insists that Coopwood was solvent when he left the State.

Mr. Ligon, a witness, states, that he was employed to defend the suits; that they were brought by complainant, to the September term, 1838. That he attended to them alone, some three or four years—filed declarations, and examined the witnesses, where testimony was taken by deposition. That the cases were finally tried by Hopkins and Cooper. This witness estimates the value of complainant's services, in conducting the suits, procuring the testimony, &c., at $250; and thinks that Driver and Coopwood are reputed insolvent.

Jackson, another witness, states, about the same as to the bringing of the suits; and also, that Driver and Coopwood, are reputed insolvent.

William Cooper states, that the suits were brought by Wallace. That Hopkins, Wallace, himself, and Coopwood, had an interview in reference to the fees. That Coopwood was unwilling to pay more than $400, that he proposed to withdraw, but Wallace said that he would, inasmuch as he had to be at Tuscaloosa. The next day Coopwood and Driver were removed, and Henderson was appointed administrator de bonis non. Henderson executed his two notes, for $200 each, one to Hopkins and one to Cooper—this was in March, 1841—and complainant then withdrew from the cases, upon what terms witness cannot state, but it was by consent of all parties. Nothing was said as to his abandoning his fees for the services rendered.

James M. Coopwood states, that complainant was employed by Driver, and attended to the suits. Has no recollection that complainant abandoned them. Some time after the suits were instituted, Driver called on witness to go to the room of Hopkins and Cooper, to settle the amount of fees to be paid; witness objected to the number of counsel, and the

Coopwood, et al. v. Wallace.

amount of fees.  Driver then stated that Wallace would withdraw from the cases, as he would be at Tuscaloosa.  To this Cooper objected, but the witness does not recollect that they came to any definite conclusion, or that Wallace abandoned the cases.

Mr. Isbell also was examined, and states, that Driver had some property about him, a small portion of which is liable to the payment of his debts.

James M. Reynolds states, that he was present when complainant was about to remove to Tuscaloosa, and heard him say to Driver, that the distance was so great from Tuscaloosa to Moulton, he could not attend farther to the suits, and advised the employment of Mr. Hopkins.   This witness also states, that Driver and Coopwood are solvent, in his opinion.

Another witness gives it as his opinion that Driver is solvent.

The chancellor rendered a decree in favor of complainant for $250, besides interest.

The errors assigned are—

1. The court erred in refusing to dismiss the bill for want of equity.

2. The court erred in refusing to dismiss the bill as to the defendant, Driver.

3. The court erred in decreeing against Henderson.

4. The court erred in refusing to sustain the statute of limitations.

5. The court erred in rendering a decree upon insufficient evidence.

Peters, for plaintiff in error, insisted, that the motion to dismiss the bill for want of equity, should have been sustained.   That if complainant had any demand, it was against Driver and Coopwood, at law.   That an administrator could not create a charge against the estate he represents, and cited 9 Ala. Rep. 334.   At all events, if there was any debt due complainant, Driver and Coopwood were liable for it at law, and that this legal remedy should have been exhausted, before resort was had to equity.

2. That the debt was barred by the statute of three years.

100

That the evidence showed, that there was no debt due complainant for services rendered, and because complainant abandoned the cases, and abandoned all claim to fees, or compensation.

L. P. WALKER, for defendant in error, contended, that the bill was properly filed. That the services were rendered for the benefit of the estate, and that complainant had the right to elect his remedy, either against Coopwood and Driver, at law, or to file his bill to charge the estate.

2. The debt was not barred, as the cause of action did not accrue until 1841.

3. That the evidence established the debt.

DARGAN, J.—The first question to be determined is, does the evidence show, that there is due the complainant any debt ? He was employed to bring three suits, by Coopwood and·Driver, an administrator of Reynolds in 1838—one writ has never been executed ; two were ; he prepared the two causes for trial, attended to the taking of the depositions of witnesses, in Mississippi, Tennessee, and Alabama : that is, he prepared all the papers necessary to their examination. The suits were much litigated ; two other counsel were employed, Mr. Hopkins, at the suggestion of the complainant, and Mr. Cooper, by the administrator ; when they were retained, is perhaps uncertain, but it does not appear that either of them rendered any service, except to try the cases. The complainant seems to have prepared the cases for trial alone.

In March, 1841, Coopwood and Driver, the administrators, had an interview with Cooper, Hopkins, and complainant, in reference to the fees to be paid. Coopwood objected to the number of counsel ; each one demanded $200. It was then agreed, that complainant should abandon the cases, as he had removed to Tuscaloosa. He did so with the consent of all ; the parties then separated, but nothing was said about complainant's abandoning his claim for compensation, for the services performed. The two suits were tried by Mr. Cooper alone, and twenty-two or three slaves were recovered, and about $1,000 by way of damages. Before the trial, how-

ever, and in a day or two after the interview, Driver and
Coopwood were removed from their office as administrators,
and Henderson was appointed administrator *de bonis non*,
and as such, has paid Cooper and Hopkins $400 fees. This
is all that has been paid. If complainant had abandoned the
cases without the consent of Driver and Coopwood, he would
have lost all claim to compensation for the services rendered;
but if he has rendered services valuable in their character,
and then withdrew from the cases, with the consent of Dri-
ver and Coopwood, because of his removal to Tuscaloosa, and
the number of counsel retained, he would not lose his right
to reasonable compensation, unless this consent was obtained
upon condition that he would abandon his claim to fees, or
unless he expressly waived his claim to fees. It does not
appear, that the consent of Driver and Coopwood was ob-
tained to his withdrawing from the cases, upon condition that
he would abandon his claim to reasonable compensation.
And although it is set up in the answer of the defendant,
Driver, as well as that of Henderson, who answers from in-
formation and belief, that complainant did agree to abandon
all claim to fees, yet there is no witness who testifies that
complainant did expressly agree to give up all claim to rea-
sonable compensation. Mr. Cooper only states, that com-
plainant withdrew from the cases with the consent of all;
and Reynolds states that he heard complainant say to Driver,
that he could not further attend to the cases, as he had to be
at Tuscaloosa. This was however long before the inter-
view before alluded to. The allegation, therefore, that he
did agree to abandon, or give up his fees for the services ren-
dered, is not, in our opinion sufficiently proved; and it is not
responsive to the bill, and therefore is required to be proved.
We come therefore to the conclusions of facts, that complain-
ant rendered valuable services to Coopwood and Driver, in
preparing the two cases for trial, that he withdrew under the
circumstances alluded to, with the consent of Driver and
Coopwood, and without abandoning his claim to fees, for the
services actually rendered, and which have been highly ben-
eficial to the estate of Reynolds.

2. The next question is, is there equity in the bill, or can
the estate of Reynolds be charged with the debt of complain-

ant, directly, now in the hands of Henderson, the administrator *de bonis non* ?

It is clear, that Coopwood and Driver, as the administrators of Reynolds, are liable at law for complainant's debt, as it was contracted by them, and it is objected, that administrators cannot contract a debt that will be a charge on the estate of the intestate, and we are referred to the case of Willis' Adm'r v. The Heirs of Willis, 9 Ala. Rep. 334, as decisive of this question. By reference to that case, it will be seen, that the debt which the administrator attempted to charge upon the estate, was for the board and support of the minor children, after the death of the intestate, and it is clear to all, that the estate of an intestate cannot be charged with a debt of this character. Although the minor children may be charged respectively for necessary support, and this charge may be enforced against each child, yet the estate of their ancestor, as such, cannot be thus charged. Yet this decision does not deny, that the estate of a decedent must bear the expenses necessary to its proper administration. That an estate must bear the burthen of its administration, is a self evident truth, and it is clear, that the debt due complainant was properly created for the benefit of the estate, and in due course of administration ; for it is the duty of an administrator to sue for, and recover, the goods of the intestate, and the expenses arising from carrying on the suits, and recovering the goods, is a proper charge against the estate.

But it is objected, that although the estate may be bound to bear these expenses, yet the complainant can look to Driver and Coopwood alone, at law, for payment of his debt. This would be true, if the estate of Reynolds had ever borne the burthen of this debt. That is, if Driver and Coopwood, because of their liability to complainant, had charged this debt to the estate, and that charge had been allowed. But it is not pretended that this is the case, or that the estate in any manner has ever paid it.

3. This being the case, can the complainant come into equity, in the first instance, without suit at law against Driver and Coopwood, to subject the estate to the payment of this debt ? We will not determine, whether this would be permitted, if Coopwood, and Driver, both resided in this State, and were

Coopwood, et al. v. Wallace.

solvent.   But Coopwood has removed from the State, and Driver we believe to be insolvent, and that a suit at law against him would be fruitless.   We will not therefore, drive the complainant to a foreign jurisdiction against Coopwood, nor to a fruitless suit at law, against Driver; but will let him proceed directly against the estate of Reynolds, which is bound to pay the debt ultimately.   The propriety of this course is sustained, by the law of Nelson, Carleton & Co. v. Gray's adm'rs, et al. 5 Howard S. C. Rep.   That was a case of a bill against Hill, surviving partner, and also against the administrators of Gray, seeking to enforce collection of a partnership debt, that had been contracted by the firm of Hill & Gray.   Hill was insolvent in fact, but no suit at law had been brought against him.   The supreme court sustained the bill, reversing the decree of the circuit court, that. had allowed a demurrer, because no suit at law had been prosecuted against the surviving partner.   We come therefore to the conclusion, that the bill was properly filed, and under the authority of the case referred to, and the cases therein cited, we think it was proper to make Driver and Coopwood parties to the bill, although no decree could be rendered against them, as the remedy as to them was at law.

4. The statute of limitations of three years is relied on, but the cause of action did not accrue until the complainant withdrew from the cases; this was on the 15th March, 1841, as is shown by the testimony of Cooper, and the bill was filed in 1843, therefore the debt is not barred by the statute.

5. The only remaining question, is, as to the amount that should have been allowed complainant.   The chancellor allowed $250, besides interest.   The testimony of Mr. Ligon goes to show, that this is a reasonable amount, but the testimony of Mr. Cooper, and also of Coopwood, shows, that at the time the complainant withdrew from the cases, and at the time Driver, Cooper, Hopkins, complainant, and Coopwood, had an interview to settle the amount of fees, it was thought that $200 each, would be fair compensation.   Complainant has done nothing since, towards the prosecution of the suits, and did not then expect, perhaps, further to attend to them; and if he then estimated his services at $200, they ought still to be so estimated.   We therefore think, the chancellor erred

in allowing $250, with interest. His decree is therefore reversed, and a decree will be here rendered, in favor of complainant, for $200 for his debt, and $64 interest thereon, from the time the bill was filed. Samuel Henderson, as administrator, will pay the cost of this suit in the court below, and the defendant in error will pay the cost of this court.