# Etowah Mining Co., *et al. v.* Wills Valley Mining & Mfg. Co.

*Bill in Equity to Have a Lien Declared on Trust Property.*

1. *Chancery; landlord and tenant; lien.*—The owner of an iron mine leased it to a mining company, and the lease authorized the mining company to take ore from the mines, and the company agreed to pay a royalty on all ore taken therefrom. Subsequently, and during the existence of said lease, the mining company made a final assignment for the benefit of its creditors, and the lease, with other property, was transferred to a trustee, who was authorized to continue the operation of the mines and to pay the royalty as provided by the lease. The royalty due was never paid, either by the mining company or the trustee; and the bill was filed by the owner of the mines to have a prior lien declared in favor of the owner upon certain property of the mining company. Held: The bill could not be maintained. The mining company never ceased to be liable to the owner of the mines, who could have acquiesced in the assignment and demanded the royalty of the trustee, or could have refused to look to the trustee and have demanded the royalty from the mining company; therefore, the owner's remedy was by an action at law, and no lien was reserved in the lease contract, and none was given by law. .

Appeal from the City Court of Gadsden, in Equity. Heard before the Hon. John H. Disque.

The facts of this case are sufficiently stated in the opinion.

CULLI & MARTIN, for appellant, cited;—*Taylor, et al. v. Crook, et al.*, 136 Ala. 354; *Marble City v. Golden*, 110 Ala. 377; *Moore v. Lesser*, 33 Ala. 237; *Coleman v. Camp*, 36 Ala. 159; *Ashurst v. McKenzie*, 92 Ala. 484.

No counsel marked as appearing for appellee.

SIMPSON, J.—In this case it appears that the appellee (complainant) leased a certain iron mine to the appellant (respondent), Etowah Mining Company, "Under which lease said Etowah Company had the right to take, from said mine, iron ore and in which it was agreed that royalty should be paid for all ore thus taken;" that subsequently, and during the existence of said lease, said Etowah Company made a general assignment for the benefit of its creditors, by which said lease (with other property) was transferred to said W. M. Nixon as trustee, who was authorized to continue the operation of the mines and pay the royalty, as provided by the lease. Said Nixon as trustee operated said mines until March 14, 1894, and his trust terminated January 1st, 1895.

It is claimed that the royalty due has never been paid, either by Nixon, trustee, or the Etowah Company.

The prayer of the bill is that a prior lien be declared, in favor of complainant, on certain property of the Etowah Company, which is a domestic corporation, but its officers have been out of the State for several years.

The appeal is from the decree of the city court sitting in equity, overruling the demurrers to the bill and a motion to dismiss for want of equity.

Referring to the point made by the learned judge in his opinion, regarding the right of a party to proceed against the trust estate, to recover for services rendered to or debts incurred by the trustee; the case of *Coopwood v. Wallace*, 12 Ala. 790, decided that, where an attorney had rendered services to an estate, at the instance of the administrator, and one administrator had moved from the State and the other become insolvent, neither

having made any charge against the estate, the attorney could proceed at once against the estate, without previously suing the administrators.

This case came under review, at a subsequent term of this Court, and, in an able opinion, going back to the leading opinion delivered by Lord Chancellor Eldon, and showing that, even where the expenses in question were provided for in the deed of trust, the great weight of authority was against the principle laid down in that case, the Court distinctly overruled it, saying, "To hold that persons employed by an administrator or trustee, may, if such trustee is insolvent, proceed at once in equity to recover their fees out of the trust fund or estate, although such fees may not have been allowed the trustee in the settlement, would be most mischievous in its tendency, as involving estates in much embarrassment and cost."—*Jones v. Dawson*, 19 Ala. 672, 678.　This case was quoted with approval by this Court in the case of *Kirkman, Abernathy & Hannah v. Benham*, 28 Ala. 501, 506.　And, following these, this Court decided that one who has rendered services to an estate, at the instance of the administrator, cannot subject the estate to the payment of his claim, after the administration has been closed.—*Lyon v. Hays*, 30 Ala. 430.

The Court, subsequently, while re-affirming the last three cited cases and holding that a wife's separate estate cannot be subjected in equity, for services rendered to him, under contract with her husband, goes on to state that "A majority of the Court *doubt* the correctness of *Jones v. Dawson*, so far as it overrules, or conflicts with any point actually decided in *Coopwood v. Wallace*." "They *incline to* the opinion, that when an administrator, who is required by law to see that reasonable diligence is used for the collection of money due the estate, in the proper performance of that duty, selects an attorney to collect it, and is not indebted to the estate, and is insolvent, and has not charged the estate with the fees or compensation due the attorney, a case is presented which, *perhaps,* may be distinguished from that which was presented in *Jones v. Dawson, Kirkman v. Benham, Lyons v. Hays* or here."—*Mulhall v. Williams*, 32 Ala. 489.

40

In a, subsequent case, where the executrix had power to carry on and manage a farm, which, it was contended, gave her the incidental power to make debts against it, the Court held that one rendering service to a trust estate, at the instance of the trustee, cannot, after suit against the trustee followed by judgment and return of no property found, proceed in equity against the trust estate. The Court specially refers to the cases of *Coopwood v. Wallace* and *Jones v. Dawson*, and doubts the former and adheres to the latter.—*Wade v. Pope*, 44 Ala. 690, 694, 696; see also *Steele v. Steele*, 64 Ala. 438.

On April 8th, 1873, the legislature undertook to regulate this matter by the act which appears in the Code of 1876.—§ 3747. And Chief Justice BRICKELL declares that previous to that statute "Repeated adjudications of this Court had settled, beyond further controversy, that a, trustee, in the absence of express power conferred by the instrument creating the trust, could not, by his contracts or engagements, impose a liability on the trust estate," and he treats the *Coopwood v. Wallace* case, as an exception to the rule, (seemingly, because, in that case, the services of the attorney had brought the assets into the estate).—*Askew v. Myrick*, 54 Ala. 30-1.

That act provided for a suit against the administrator, but "To be levied and satisfied out of the trust property," or, in case the chancery court had taken jurisdiction of the estate, by a, petition in that court.—Code of 1896, § § 3747, 3748.

And this Court, speaking through Judge STONE, referred to this act as allowing the claim out of the trust estate "To the extent such trust estate was indebted to" the trustee.—*Munden v. Bailey*, 70 Ala. 65, 74. And, in a, subsequent case, Chief Justice BRICKELL, speaking for the Court, decided that, if a trustee "Make a contract which is beneficial to the estate, the creditor \* \* \* has no equity to charge the estate, unless *he is insolvent, which must be shown by the exhaustion of legal remedies against him,* and the estate is indebted to him," in which case the court subrogates the creditor to the right of the trustee.—*Blackshear v. Burke*, 74 Ala. 239, 243.

The statute in its present form authorizes the proceed-

ing in chancery against the trustee or his successor in trust, and the allowance is specified as "For the payment for necessary services rendered to him, or for necessary repairs in and upon the estate, or for necessaries furnished to him, if he be or become insolvent without making payment, and has not charged the estate with, and obtained credit for such services, repairs or necessaries." —Code 1896, § § 4183, 4184.

In the latest deliverance of this Court on this subject the Court says: "There can be no doubt that the case of *Coopwood v. Wallace* has been practically repudiated and completely overwhelmed by many subsequent cases affirming the general rule, of which *Steele v. Steele* may be taken as an example, and confirmed by statute (Code § 4183) providing for the particular cases in which, and the conditions upon which, trust estates may be liable, * * * * which must be considered as excluding all other cases."—*Taylor v. Crook,* 136 Ala. 354, 376.

In the case at bar, the character of the claim does not come within those provided for by the statute, nor do the allegations of the bill comply with statutory requirements. The trustee could not fix a liability on the trust estate for the amount due for taking ore. The authority conferred upon him by the deed of trust was "To protect the leases and contracts from lapses and forfeitures by payment or securing *the minimum royalty required,"* and, for this purpose he was authorized to use funds from sales and to pledge or hypothecate the property. If, during the progress of the trusteeship, there had been a danger of forfeiture, the trustee might have been forced to protect the property from forfeiture, but this is not that case.

This provision seems to have been to provide for a necessity which might have arisen if the mines had not been worked at all.

According to the lease, the Etowah Company was under obligation to pay royalty to the complainant on all ore mined. While said company might transfer the right to mine the ore to a trustee, yet it could not relieve itself from the obligation to pay the royalty, without the consent of the appellant. So that the original contractor never ceased to be liable to the complainant,

and said complainant could have acquiesced in the as-
signment and demanded his money of the trustee, or re-
fused to have looked to the trustee and demanded his
money of the original contracting party. This being the
case, the remedy in either case was by a simple action of
law. No lien was reserved in the lease contract, and
none is given by law. Hence, there was no occasion nor
excuse for a resort to a court of equity.

The judgment of the court is reversed and a decree
will be here entered, dismissing the bill for want of
equity.

Reversed and rendered.

McCLELLAN, C. J., TYSON and ANDERSON, J.J., con-
curring.